UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No: ______________________________

LINDSEY ADELMAN STUDIO, LLC, a New York limited liability company, LINDSEY ADELMAN, individually,

Plaintiffs,

vs.

ZORA Lighting Co., Ltd., a Chinese business entity; Liang Tang, individually, and John Does Nos. 1 - 5,

Defendants.
______________________________/

# Plaintiffs' Memorandum of Law In Support of Ex Parte Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue

Becker & Poliakoff, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
Telephone: (954) 987-7550
Facsimile: (954) 985-4176
grosen@beckerlawyers.com
kmarkow@beckerlawyers.com
oedwards7@beckerlawyers.com

By: /s/ Gary C. Rosen
Gary C. Rosen, Esq.
NY Bar No. 5581616
Kevin Markow, Esq.
FL Bar No. 66982
*(pro hac vice pending)*
Oliver Edwards VII, Esq.
NY Bar No. 5168174

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

A. Plaintiffs' Business and Recognition ..... 3

B. The Lindsey Adelman Marks ..... 7

C. Defendants' Counterfeiting and Infringing Activities ..... 8

D. Defendants' Purposeful Deception and Concealment of their true Identities ..... 15

III. ARGUMENT ..... 17

A. A Temporary Restraining Order is Essential to Prevent Immediate Injury ..... 17

B. Standard for Temporary Restraining Order and Preliminary Injunction ..... 19

C. Plaintiffs Have a Substantial Likelihood of Success on the Merits ..... 20

1. Plaintiffs Have Valid Trademarks Entitled to Protection ..... 21

2. Defendants' Counterfeiting and Infringement are Likely to Cause Confusion ..... 22

a. Counterfeiting is Inherently Confusing ..... 22

b. Defendants Can Mount No Defense In Support of their Purposeful Misconduct ..... 25

D. Plaintiffs are Suffering Irreparable Harm and have no Adequate Remedy at Law ..... 27

E. The Balance of Equities and Public Interest Favor Preliminary Injunctive Relief ..... 29

IV. EQUITABLE RELIEF IS APPROPRIATE INCLUDING ORDERING SERVICE PROVIDERS TO CEASE PROVIDING SERVICES TO DEFENDANTS ..... 30

A. Entry of an Order Immediately Enjoining Defendants' Unauthorized Use of the Lindsey Adelman marks is Appropriate ..... 30

B. An Order Prohibiting Transfer of Defendants' Domain Names, Modifying Control, Redirecting, and Disabling During the Pendency of this Action is Appropriate ..... 31

C. Bond to Secure the Requested Injunctive Relief ..... 32

V. PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING ..... 33

DEMAND ..... 33

**TABLE OF AUTHORITIES**

***Cases***

*Advanced Access Content System Licensing Administrator, LLC v. Shen*, [Doc. No. 21], No. 14-cv-1112 (VSB)(S.D.N.Y. Mar. 4, 2014) .......... 32

*Animale Grp. Inc. v. Sunny's Perfume Inc*., 256 F. App'x 707, 709 (5th Cir. 2007) .......... 33

*Arista Records, LLC v. Tkach*, No. 15-cv-3701 (AKN), at 3, 5–11 (SDNY June 3, 2015).......... 32

*Arrow Fastener v. Stanley Works*, 59 F.3d 384, 390 (2d Cir.1995) .......... 20, 23

*Belstaff Group SA v. Doe*, 2015 WL 10852520, at *1 (S.D.N.Y. June 18, 2015).......... 18, 32

*Century Home Entertainment, Inc. v. Laser Beat, Inc.*, 859 F.Supp. 636, 638 (E.D.N.Y.1994).......... 18

*Christian Louboutin S.A. v. Yves Saint Laurent America Holding, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012).......... 19

*Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 456–58 (S.D.N.Y. 2017) .......... 25

*Dell Inc. v. Belgium Domains, LLC*, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007).......... 19

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) .......... 18, 27

*Edward B. Beharry & Co., Ltd. v. Bedessee Imports Inc.*, 2006 WL 3095827, at *1 (E.D.N.Y. Oct.31, 2006).......... 20

*El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986).......... 24

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F.Supp.2d 585, 596–97 (S.D.N.Y.2010).......... 23

*Fequiere v. Tribeca Lending*, 2015 WL 1412580, at *2 (E.D.N.Y. Mar.20, 2015) .......... 19

*Ferragamo v. Does,* 2014 WL 12543812 (S.D.N.Y. Feb. 5, 2014).......... 18

*Gucci Am., Inc. v. Duty Free Apparel Ltd.*, 286 F.Supp.2d 284, 287 (S.D.N.Y.2003) .......... 23

*Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 248 - 249 n. 7 (S.D.N.Y. 2010).......... 26

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 130 (2d Cir. 2014) .......... 33

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 106 (2d Cir.2000).......... 26

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 154–55 (E.D.N.Y. 2016).......... 21, 23

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 167 (2d Cir. 2016)........................................................................................................ 25

*Invicta Plastics (USA) Ltd. v. Mego Corp.*, 523 F.Supp. 619, 622 (S.D.N.Y.1981) .................... 21

*Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir.2002)........................................................ 27

*Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt. Inc.*, 192 F.3d 337, 345 (2d Cir.1999).................... 22

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986–87 (11th Cir.1995).............. 33

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F.Supp.2d 448, 454 (S.D.N.Y.2005)........ 21

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp. 2d 1098, 1103 (N.D. Cal. 2008) ......................................................................................................................... 26

*Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 584–85 (5th Cir.1980) ............................... 33

*Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) ................................................ 17, 18

*Microsoft Corp. v. AGA Solutions, Inc.*, 589 F.Supp.2d 195, 202 (E.D.N.Y.2008) ..................... 21

*Moose Toys Pty Ltd. v. Thriftway Hylan Blvd. Drug Corp.*, 2015 WL 4772173, at *2–4 (E.D.N.Y. Aug. 6, 2015)....................................................................... 18, 19, 22, 23

*Nat'l Rural Elec. Co-op Ass'n v. National Agr. Chemical Ass'n*, 26 U.S.P.Q.2d (BNA) 1294, 1299 (D.D.C.1992) ............................................................................................................ 29

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F.Supp.2d 305, 342 (S.D.N.Y.2010)............................................................................................................ 28, 30

*Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999)....................... 20

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495–96 (2d Cir.1961) .......................... 23

*Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir.1985)........... 28

*Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir.1992) ........................ 33

*Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010) ....... 27

*Richemont Int'l SA v. Chen*, No. 12-cv-6689 (SDNY Sept. 4, 2012).......................................... 32

*Richemont Int'l SA v. Xiao*, No. 13-cv-9071 (SDNY Dec. 23, 2013) ......................................... 32

*Salinger v. Colting*, 607 F.3d 68, 74–75 (2d Cir. 2010) ................................................ 18, 20, 27

*Salvatore Ferragamo S.P.A. v. Does,* 2013 WL 12108075, at *1 (S.D.N.Y. Nov. 22, 2013) ........................................................................................................................... 18

*Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) ....................... 24

*SK & F, Co. v. Premo Pharm. Labs., Inc.*, 625 F.2d 1055, 1067 (3d Cir.1980) .......................... 29

*Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 410–13 (S.D.N.Y. 2011)....................... 28

*The Nat'l Football League v. Chen*, No. 11-Civ-0344 (WHP)(SDNY Jan. 19, 2011)................ 32

*The New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 308 (9th Cir.1992)........................................................................................................................ 25

*The North Face Apparel Corp. v. Fujian Sharing Import & Export Ltd.,* 10-Civ-1630 (AKH)(SDNY)........................................................................................................ 32

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 100 (2d Cir. 2010) ................................................ 26

*Time Warner Entertainment Co., L.P. v. Does Nos. 1-2*, 876 F. Supp. 407, 410 (E.D.N.Y. 1994) ....................................................................................................................... 18

*Tom Doherty Assoc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37–38 (2d Cir.1995)............................. 28

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992)................................................................................................................ 21

*U.S. Polo Assoc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011).......... 27

*Warner Bros. Ent., Inc. v. Doe*, No. 14-cv-3492 (KPF)(SDNY May 29, 2014) .......................... 32

*Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 489 - 90 (S.D.N.Y. 2008) ............ 25, 27

***Statutes***

15 U.S.C § 1114........................................................................................................................ 21

15 U.S.C. § 1116........................................................................................................................ 30

15 U.S.C. § 1125........................................................................................................................ 21

15 U.S.C. §1117........................................................................................................................ 33

15 U.S.C. §1127........................................................................................................................ 22

***Rules***

Fed. R. Civ. P. 65(b) ................................................................................................................ 17

Fed. R. Civ. P. 65(c) ................................................................................................................ 33

Fed. R. Civ.P. 65(d)(2)............................................................................................................... 30

Plaintiffs, Lindsey Adelman Studio, LLC, and Lindsey Adelman, individually, file their Memorandum of Law in Support of Ex Parte Motion for Temporary Restraining Order and Order to Show Cause why a Preliminary Injunction Should not issue, and Supporting Memorandum of Law pursuant to Fed. R. Civ. P. 65 and Local Rule 7.1 against Defendants, ZORA Lighting Co., Ltd., a Chinese business entity, Liang Tang, a Chinese citizen, and John Does Nos. 1 - 5, and in support thereof, state as follows:

## I. INTRODUCTION

Plaintiffs seek a temporary restraining order and preliminary injunction to enjoin Defendants' counterfeiting, intentional infringement and passing off inauthentic, inferior goods while utilizing and incorporating Plaintiffs' protected trademarks without consent or authorization. A temporary restraining order and preliminary injunction are proper pursuant to Fed. R. Civ. P. 65, 15 U.S.C. sections 1114(1)(a), 1116(a), 1125(a), and the Court's inherent equitable powers.[1]

As alleged in Plaintiffs' Complaint, Defendants are promoting, advertising, distributing, offering for sale and selling products bearing counterfeits and infringements of trademarks that are substantially indistinguishable from Plaintiffs' registered and unregistered trademarks. Defendants' conduct is intentionally calculated to trade off of, and usurp for themselves the good will and favorable reputation developed in Plaintiffs' "Lindsey Adelman" marks through intensive work, promotion and investment.

[1] Plaintiffs seek relief herein pursuant to Counts I, II, III, and IV of their Complaint asserting claims for: Infringement of Registered Trademark "LINDSEY ADELMAN STUDIO" (count I); Infringement of Registered Trademark "BRANCHING BUBBLE" (count II); False designation of Origin/Infringement of Unregistered Trademark "LINDSEY ADELMAN" (count III); and False designation of Origin/Infringement of Unregistered "LINDSEY ADELMAN marks" (count IV).

Defendants' engage in promotion and sale of counterfeit and infringing copies of Plaintiffs' acclaimed lighting design products through at least one known fully interactive commercial website, www.zoralighting.com (the "subject domain name") and potentially others, and a substantial social media presence, including on facebook.com, instagram.com, pinterest.com and others, operating under Defendants' partnership or unincorporated association names.

Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiffs, Lindsey Adelman Studio and Lindsey Adelman. Among other things, Defendants have (1) deprived Lindsey Adelman Studio and Lindsey Adelman of their right to determine the manner in which their trademarks are presented to the public through merchandising; (2) defrauded the public into thinking the Defendants' goods are valuable, authorized goods of Lindsey Adelman Studio and Lindsey Adelman; (3) deceived the public as to Plaintiffs' sponsorship of, and association with Defendants' products and their website(s) through which they are marketed and sold; (4) wrongfully traded and capitalized on Plaintiffs' reputation and goodwill and the commercial value of Plaintiffs' trademarks; (5) damaged Lindsey Adelman Studio's and Lindsey Adelman's ability to market their goods and educate consumers about their brand via the Internet in a free and fair marketplace and (6) participated in the creation and/or maintenance of an illegal marketplace on the internet, the purposes of which are to (i) confuse consumers regarding the source of Defendants' goods for profit, and (ii) expand the marketplace for illegal, counterfeit goods while shrinking the legitimate marketplace for genuine Lindsey Adelman Studio products and designs.

The natural and intended byproduct of Defendants' actions is the erosion of the overall legitimate marketplace in which Lindsey Adelman Studio and Lindsey Adelman operate and the goodwill associated with the Lindsey Adelman name.

Defendants' unlawful activities have deprived and continue to deprive Plaintiffs of their right to determine the manner in which their trademarks are presented to the public. Defendants have and continue to wrongfully trade and capitalize on Lindsey Adelman Studio's and Lindsey Adelman's reputations and the goodwill and value of their trademarks. Defendants should not be permitted to continue their unlawful activities which are causing Plaintiffs ongoing irreparable harm. As a result, Plaintiffs are seeking entry of a temporary restraining order and preliminary injunction prohibiting Defendants' continued use and infringement of the Lindsey Adelman trademarks.

## II. FACTUAL BACKGROUND

### A. Plaintiffs' Business and Recognition

Since 2006, Lindsey Adelman has specialized in lighting design, creating unique, fixed lighting concepts and installations for indoor use. *See* Declaration of Alexander Perros, President of Lindsey Adelman Studio, attached hereto as Exhibit "A" at ¶ 6 ("Perros Dec."). Lindsey Adelman sold her first lighting products under the unregistered LINDSEY ADELMAN trademark in 2006, and has continuously, designed, sold, marketed and refined LINDSEY ADELMAN-branded lighting products under the LINDSEY ADELMAN trademark and later under the LINDSEY ADELMAN STUDIO trademark. *Id*. In the time since, the LINDSEY ADELMAN mark, through over 20 years of continuous use, has become famous and synonymous with high quality and uniquely designed lighting fixtures. *Id*.

Plaintiff, Lindsey Adelman Studio, is, and has been the exclusive seller and distributor of LINDSEY ADELMAN branded and designed lighting designs since its inception in 2006. *Id*. at ¶ 17. Since its creation in 2006, LINDSEY ADELMAN STUDIO has become synonymous with high quality and uniquely designed lighting fixtures originating from Lindsey Adelman. *Id*. at ¶


LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

19. Among designers and consumers of high-end interior design, Plaintiffs are known for the highest quality and artistry in their original modern interior lighting products sold under the LINDSEY ADELMAN STUDIO and LINDSEY ADELMAN trademarks. *Id*. at ¶ 20.

The inaugural product launched by Lindsey Adelman Studio in 2006 remains its most iconic: the *Branching Bubble* chandelier. *Id*. at ¶ 22. The *Branching Bubble* chandelier and collection have become famous and are instantly recognizable among the relevant consuming public as being an iconic product of the Lindsey Adelman Studio. *Id*.

This distinct *Branching Bubble* chandelier and collection, sold under the LINDSEY ADELMAN, LINDSEY ADELMAN STUDIO and BRANCHING BUBBLES trademarks have become must-have items among a distinct high-end segment of the consuming public. *Id*. at ¶ 20. Below is an example of the design:



Plaintiffs' customers and consumers who have purchased their products, including *Branching Bubble* products include style and arts design trend setters and A-list celebrities. *Id*. at ¶ 21. The *Branching Bubble* chandelier, and other LINDSEY ADELMAN STUDIO-branded products have been featured in many artistic, design and trade publications. *Id.* at ¶¶ 28-34. *Branching Bubbles* chandeliers have been recognized and displayed in leading art houses and design museums for their lighting design aesthetic. *Id*. at ¶ 24.

The January 2016 issue of *WSJ Magazine* described Lindsey Adelman as having "set a standard for success that many American designers dream of reaching." *Id*. at ¶ 28. The *Branching Bubble* lighting system have been described by both *W Magazine* and *Vogue Living* as a "design status symbol." *Id*. at ¶ 29.

Lindsey Adelman Studio has spent countless hours, and resources valued in the millions of dollars on promotion and advertising prominently featuring the *Branching Bubble* design and other Adelman designs, emphasizing their unique and distinctive appearance. *Id*. at ¶ 26. As a result, the *Branching Bubble* system has become popular among celebrities and other high-end consumers, and numerous articles have profiled the development and success of the *Branching Bubble* design collection. *Id*. at ¶¶ 21; 28-35. The website "The Future Perfect" (www.thefutureperfect.com) has described Ms. Adelman and her work as follows:

> Just over a decade since founding her namesake studio, Lindsey Adelman has become one of America's most influential tastemakers. A piece of Lindsey Adelman lighting is instantly recognizable for its pop sensibility, shape-shifting forms and ingenious use of raw materials. Playful, collaborative, and romantic, key collection pieces range from vine-like fringed wall lights to Adelman's seminal branching blown glass "Bubble" chandeliers. A Lindsey Adelman chandelier is one of a kind.

*Id*. at ¶ 30.

The May/June 2017 issue of *Luxe* magazine, stated that the "Bubble" chandeliers "have become something of an icon…." The August 1, 2017 issue of *The Cut* magazine stated that "…in demand Adelman is best known for her sculptural, blown-glass-and-brass Branching Bubble chandeliers, which take up to 24 weeks to complete. As clients will tell you, they're well worth the wait…." *Id*. at ¶ 32.

The June 15, 2016 issue of *W* magazine described Lindsey Adelman Studio as follows:



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

> Since making the first one, about 10 years ago, Lindsey Adelman has watched her Branching chandelier, with its hand-blown glass globes budding from a sinewy, multipronged glass stem, become a design status symbol - and a fixture in splashy shelter-magazine spreads.

*Id*. at ¶ 33.

In the April 13, 2017 issue of *The Hollywood Reporter* magazine, under the heading "Ultimate Décor Object of Desire," one of the entries refers to "Bubble chandelier by Lindsey Adelman", stating:

> 'There's a real wow factor wherever it's hung,' says Trip Haenisch, designer for Hank Azaria and WME's Patrick Whitesell, of Adelman's Branching Bubble lighting series, which possibly is the most celebrity-owned fixture in Hollywood. 'It's a work of art, romantic and transitional, that works equally well in modern and traditional homes.' At Adelman's newly opened Arts District outpost, there's a 24-week production lead time for the pieces, which have been hung by Gwyneth Paltrow, Reese Witherspoon, and Jon Hamm ($9,000.00 to $30,000.00).

*Id*. at ¶ 34.

The May 6, 2017 issue of *Vogue* described Ms. Adelman's designs as "The lighting collection that belongs on your wish list," and further stated: "Instantly recognizable, each piece from the famed Lindsey Adelman Studio is an iconic statement of lighting design." It then highlights through photographs three of "the most desired chandeliers from her latest collection," one of which was from the *Branching Bubble* collection. *Id*. at ¶ 35.

Plaintiffs' products have been exhibited at famous art and design institutions, including the Smithsonian Design Museum, the Cooper Hewitt National Design Museum, and Design Miami. Further, the *Branching Bubble* systems have been sold at BBDW in New York, the Nilufur Gallery in Milan, and through high-end sellers and showcases in cities such as London, Paris, Hong Kong, Toronto, and Vancouver. *Id*. at ¶¶ 21; 24.



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

**B. The Lindsey Adelman Marks**

On February 20, 2018, Lindsey Adelman Studio obtained a trademark registration from the United States Patent & Trademark Office for the LINDSEY ADELMAN STUDIO trademark, Reg. No. 5,407,182. *Id*. at ¶ 7.

On February 5, 2019, Lindsey Adelman Studio obtained a trademark registration from the United States Patent & Trademark Office for the BRANCHING BUBBLE trademark, Reg. No. 87,716,123. *Id*. at ¶ 8.

In addition to those registered marks, Plaintiffs utilize other marks and indicators of origin in the sale of Lindsey Adelman designed light fixtures. *Id*. ¶ at 9 These include the LINDSEY ADELMAN name, and Plaintiffs' famous design collections, including AGNES, CHERRY BOMB, BURST, EDIE, and BRANCHING DISC. *Id*. These, together with the above registered marks are collectively referred to as the "Lindsey Adelman marks".

The Lindsey Adelman marks have come to be associated with lighting designs containing critically acclaimed artistry and the best-quality craftsmanship originating from Plaintiffs. *Id*. at ¶¶ 18-27. These marks are inherently distinctive, and have otherwise acquired secondary meaning among interior designers and consumers of high end interior design products. *Id*. at ¶ 18.

Because of Lindsey Adelman's accomplishments in pushing the boundaries of artistry, the use of space in lighting design, and the recognition achieved by Lindsey Adelman in her field, LINDSEY ADELMAN-branded products have become status symbols and "must-have" pieces among the exclusive clientele of high-end interior designers servicing a unique segment of the consuming public. *Id*. at ¶ 20.

Plaintiffs are the owners of all rights in and to the Lindsey Adelman marks. *Id*. at ¶ 17. The Lindsey Adelman marks are used in connection with the manufacture and distribution of high



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

quality lighting design products described in Plaintiffs' Complaint. *Id*. at ¶¶ 6; 20. The marks are indicators of source and origin of Plaintiffs' quality, reputation, and goodwill. *Id*. at ¶¶ 6-27. The marks are actively utilized by Plaintiffs, and Lindsey Adelman Studio has expended substantial time, money, and resources developing, advertising, and otherwise promoting its marks through many exhibitions, art and design events and gatherings, domestically and abroad. *Id*. As a result, substantial good will has been created and resides within the Lindsey Adelman marks.

At all times relevant hereto, Defendants have been aware of Plaintiffs' ownership of the Lindsey Adelman marks, the exclusive rights to use and control such marks, and the substantial goodwill and favorable recognition for the Lindsey Adelman marks. *Id*. at ¶¶ 36-57.

**C. Defendants' Counterfeiting and Infringing Activities**

Defendants do not have, nor have they ever had the right or authority to use the Lindsey Adelman marks for any purpose. *Id*. at ¶ 36. Despite their lack of authority, Defendants have been advertising, offering for sale, and/or selling identical or substantially similar copies of Plaintiffs' lighting products bearing counterfeit and infringing marks. *Id*. at ¶ 37.

Defendants are engaged in a pattern of counterfeiting, intentional infringement, and trading off of the goodwill residing in the Lindsey Adelman marks. *Id*. at ¶¶ 36-58. Defendants have built a substantial internet presence with the www.zoralighting.com website and through social media activities that market and sell counterfeit and infringing Lindsey Adelman products. *Id*. at ¶ 38.

Through a concerted strategy, Defendants draw customers to their website by utilizing a collection of Lindsey Adelman marks, authentic Adelman-product images, pirated famous designs, and other indicators of origin, including a photograph and biography of Lindsey Adelman herself. *Id*. at ¶ 39.



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

Upon landing on the home page of Defendants' www.zoralighting.com website, authentic images of Plaintiffs' famous lighting designs are prominently featured for sale under product tags that mimic authentic Lindsey Adelman marks. *Id*. at ¶ 39. Exhibit "7" to the Perros Declaration is a copy of Defendants' homepage (https://www.zoralighting.com/index.php?route=common/home) containing authentic images of Plaintiffs' products to drive Defendants' sale of counterfeits. *See also Id*. at 40.

Defendants' website home page links to a dedicated "Lindsey Adelman" store within the www.zoralighting.com site, found at https://www.zoralighting.com/Replica-Lindsey-Adelman ("Defendants' Lindsey Adelman page"). *Id*. at ¶ 42. Prominently featured on Defendants' Lindsey Adelman page is an authentic photograph of Lindsey Adelman with brief description of Plaintiffs' rise and prominence in the lighting design world. *Id*. at ¶ 44.

The designer-description adjacent to Ms. Adelman's picture recognizes the iconic status that Plaintiffs' lighting designs have achieved, starting with the *Branching Bubble* chandelier, and the goodwill residing in the Lindsey Adelman marks, stating that:

> In 2006 when the Lindsey Adelman Studio released their inaugural fixture - the Branching Bubble Chandelier - I went gaga. And each new piece is breathtaking. Lindsey's bio cites her inspiration as structural forms and nature, and that inspiration is clear in the beautifully delicate balance of hand blown glass and machine parts that compose many of her pieces. The studio's work is truly a functional art, and it is drool worthy.

*Id*.

Defendants intend for consumers purchasing their counterfeit products, and/or members of the public who view products sold by Zora Lighting to believe those goods are authentic lighting designs originating from Plaintiffs. *Id*. at ¶ 53. Defendants' purposefully pass-off their goods as


LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

Plaintiffs' and suggests a close relationship with Plaintiffs throughout their website, social media accounts, and in bold marketing activities. *Id*. at ¶¶ 36-58.

Defendants have gone so far as to make public statements, including through a press release, outrageously claiming that Zora Lighting sells authentic products from Plaintiffs. Attached to the Perros Declaration as Exhibit "9" is a press release that was published on and obtained from www.digitaljournal.com in which Zora Lighting states that:

> **The firm supplies lighting products from the Lindsay Adelman studio which is a well-known name since the release of its inaugural fixture the Branching Bubble Chandelier, in 2006. The products are made of delicate hand-blown glass and machine parts and take inspiration from structural forms and nature.**

(emphasis added).

Defendants' claim to offer "products from Lindsey Adelman studio" is part of their ongoing effort to counterfeit Plaintiffs' lighting designs and the goodwill residing in the Lindsey Adelman marks. *Id*. at ¶ 46. The press release contains other falsehoods, among them that Zora Lighting is a U.S. based company, and goes so far as to list a U.S. contact, who upon information and belief, is not affiliated with Zora Lighting. *See* Declaration of investigator Marc Hurwitz, attached hereto as Exhibit "B" at ¶¶ 10-15 (the "Hurwitz Dec.").

Defendants' display of authentic Adelman designs and photographs together with the Lindsey Adelman marks is unauthorized and part of their widespread counterfeiting and infringement of the Lindsey Adelman marks. Perros Dec. at ¶¶ 36-58. Defendants are not authorized re-sellers of Plaintiffs' products, have no relationship with Plaintiffs, and do not otherwise deal in authentic Lindsey Adelman Studio goods. *Id*. at 49.

Analysis of Defendants' website reveals that Defendants offer for sale dozens of copies of products originating from Plaintiffs while utilizing authentic images commissioned and published



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

by Lindsey Adelman Studio together with the Lindsey Adelman marks. *Id*. at ¶ 50. Attached to the Perros Declaration at composite Exhibit "10" are screen shot images of counterfeits and copies of Plaintiffs' designs and products offered for sale by Defendants on their website. *See also Id*. at ¶ 52.

Each of the lighting products contained in Exhibit "10" to the Perros Declaration, in addition to being a blatant copy of the Lindsey Adelman Studio original, also utilizes the identical names of Lindsey Adelman collections and product designs in their brazen attempt to steer customers to their cheaper facsimiles. *Id*. Employing the exact names of Lindsey Adelman Studios' collections and product names is part of Defendants' effort to pass off their goods as originating from Plaintiffs, and lead members of the public to believe their products authentically derive from Plaintiffs. *Id*. at ¶ 53. Plaintiffs' protected marks and branded collection names, such as *Cherry Bomb, Branching Bubble*, *Agnes*, *Burst*, *Edie*, and *Branching Disc* are prominently used by Defendants to suggest that their counterfeit and infringing goods originated from Plaintiffs, or have Plaintiffs' sponsorship or approval when they do not. *Id*. at ¶ 54.

In selling their infringing goods, Defendants' www.zoralighting.com website utilizes authentic photographs and images of products published by Plaintiffs' while incorporating Plaintiffs' product and collection names. Attached to the Perros Declaration as composite Exhibit "10" is a top-over-bottom comparison of screenshots taken from Defendants' website and social media posts that steal authentic photographs of Plaintiffs' actual products commissioned by Lindsey Adelman Studio, juxtaposed against Plaintiffs' authentic marketing materials showing those *identical images*. The images from Perros Dec. Exhibit "10" proves that no effort is made to mask Defendants' theft. For example:


LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550


ZORA LIGHTING
FREE SHIPPING WORLDWIDE | 100% MONEY GUARANTEE
Find anything for your home
SEARCH
ACCOUNT
SETTINGS


DESIGNER > LINDSEY ADELMAN > LINDSEY ADELMAN CHERRY BOMB FRINGE FLUSH MOUNT WALL LIGHT REPLICA
LINDSEY ADELMAN CHERRY BOMB FRINGE FLUSH MOUNT WALL LIGHT REPLICA
Brand: Lindsey Adelman
Product Code: LACBCFL
Availability: In Stock
0 REVIEW(S) ADD YOUR REVIEW
Rod Length(From ceiling plate to fixture)*
--- Please Select ---
Model*
--- Please Select ---
Voltage*
--- Please Select ---
Quantity 1
$1,050 $1,995
ADD TO CART
Tags: lindsey adelman, wall lamp
Save
DESCRIPTION ADDITIONAL INFO REVIEWS


9-GLOBE CHERRYBOMB FLUSH MOUNT
PRICING
FINISHES
DOWNLOADS
BY COLLECTION
STUDIO
COLLECTION
CUSTOM
NEWS
VIDEO
VISIT
FAQ
DIY
SEARCH
BRANCHING
BURST
DROP SYSTEM
KINGDOM
CLAMP
CATCH
CHERRYBOMB
EDIE+EMPIRE
LIGHT LINE
AGNES
KNOTTY
BY TYPE
LINDSEY ADELMAN STUDIO
T 212 473 2501
INFO@LINDSEYADELMAN.COM
PRESS@LINDSEYADELMAN.COM
MAILING LIST
Custom Cherrybomb Fringe installation for Nilufar Gallery at Salon New York, 2015.
Photo by Lauren Coleman.
https://lindseyadelman.com/cb09flushmount#



ZORA LIGHTING
FREE SHIPPING WORLDWIDE | 100% MONEY GUARANTEE
Find anything for your home
SEARCH
ACCOUNT
SETTINGS
DESIGNER > LINDSEY ADELMAN > LINDSEY ADELMAN CHERRY BOMB RADIAL CHANDELIER REPLICA
LINDSEY ADELMAN CHERRY BOMB RADIAL CHANDELIER REPLICA
Brand: Lindsey Adelman
Product Code: LACBRC
Availability: In Stock
0 REVIEW(S) ADD YOUR REVIEW
Rod Length(From ceiling plate to fixture)*
--- Please Select ---
Voltage*
Finish*
Quantity 1
$2,850 $3,995
ADD TO CART
Tags: lindsey adelman, chandelier
DESCRIPTION ADDITIONAL INFO REVIEWS




RADIAL CHERRYBOMB CBR.15.01
PRICING
FINISHES
DOWNLOADS
STOCKISTS
STUDIO
COLLECTION
CUSTOM
NEWS
VIDEO
VISIT
FAQ
DIY
SEARCH
BY COLLECTION
BRANCHING
BURST
DROP SYSTEM
KINGDOM
CLAMP
CATCH
CHERRYBOMB
EDIE+EMPIRE
LIGHT LINE
AGNES
KNOTTY
BY TYPE
LINDSEY ADELMAN STUDIO
T 212 473 2501
INFO@LINDSEYADELMAN.COM
PRESS@LINDSEYADELMAN.COM
MAILING LIST
Radial Cherry Bomb shown at Nilufar Gallery
Photo by Lauren Coleman
https://lindseyadelman.com/cherrybombradialchandelier#

Defendants use authentic pictures of Plaintiffs' lighting designs, with the Lindsey Adelman marks in the precise way that Plaintiffs utilize them, as part of their campaign to pass off Defendants' products as those of Plaintiffs, and pirate the goodwill residing in the Lindsey Adelman marks. *Id*. at ¶¶ 52-53.

To draw additional customers and traffic to their site, and drive sales of goods bearing counterfeit Lindsey Adelman marks, Defendants engage in widespread marketing activities on the internet and in social media sites. *Id*. at ¶ 58. When Defendants' pages appear, displayed prominently with and on those links are images of authentic Lindsey Adelman designs and Plaintiffs' photographs of same for sale by Defendants at a fraction of the price consumers pay for authentic Lindsey Adelman lighting designs. *Id*. at ¶ 45. Defendants are selling the knockoffs at price points significantly lower than the price Lindsey Adelman Studio charges for the same pieces. *Id*. at ¶ 46.

Defendants' business model is nothing more than a scheme to usurp and misappropriate for themselves the goodwill residing in Plaintiffs' famous and acclaimed lighting designs. *Id*. at ¶ 46. Defendants utilize and incorporate Plaintiffs' protected marks and authentic product images to promote and sell counterfeits and copies of Plaintiffs' goods at reduced prices. *Id*. Intentional infringement of the Lindsey Adelman marks, and resulting consumer confusion caused thereby, is integral to their illegal business activities.

The sale and marketing of counterfeits and knockoffs by Defendants, which trade upon, and incorporate the Lindsey Adelman marks, are causing substantial damage to the Lindsey Adelman Studio brand and business. *Id*. at ¶ 57. Consumers and members of the public are likely to be confused between authentic Lindsey Adelman Studio products from Plaintiffs and those offered by Defendants as to source, origin, sponsorship, and affiliation. *Id*. at ¶ 54. Defendants

intend to create such confusion, and have profited as a result of their calculated effort to draw a close affiliation between their goods and the Lindsey Adelman marks.

**D. Defendants' Purposeful Deception and Concealment of their true Identities**

Defendants are, upon information and belief, located in Zhongshan City, Guangdong Province, China. Hurwitz Dec. at ¶ 15. The www.zoralighting.com website is devoid of any identifiable names or real addresses. *Id*. at ¶ 11; Declaration of Kevin Markow (counsel for Plaintiffs) attached hereto as Exhibit "C" at ¶ 8. ("Markow Dec."). Defendants seek to communicate with potential users through email on the website, interactive messaging available on the site, and social media without revealing true identities. Perros Dec. at ¶60 (pp. 13 – 16); Markow Dec. at ¶ 7. Plaintiffs, undersigned counsel, and investigators hired by Plaintiffs, have sought to uncover Defendants' actual location and identities, with limited or uncertain results due to purposeful concealment, and the outright misrepresentations contained on Defendants' website. Hurwitz Dec. at ¶¶ 10-16; Perros Dec. at ¶¶ 36-58.

Defendants have masked their identities through utilizing a privacy protection service in connection with ownership of their website. Hurwitz Dec. at ¶ 13. The owner of Defendants' website is listed as "domainsbyproxy.com", which is a privacy protection service deployed by Defendants to shield their true identity. *Id*. The privacy protection service lists an address in Scottsdale, Arizona, and the name of an actual individual. *Id*. at ¶ 14. However, neither the named individual nor the Arizona address appear to be affiliated with Defendants and are instead connected with the domainsbyproxy.com service. *Id*.

Defendants have sought to anonymously register, and have maintained the subject domain name(s), for the purpose of concealing their location and identity and concealing the true perpetrators of the illegal counterfeiting and other activities alleged herein.



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

Defendants' website lists a false address in East York, Pennsylvania, as their business address. Hurwitz Dec. at ¶ 11. Plaintiffs have investigated that address, and have determined the address to be phony; Defendants do not exist at the address listed, nor are they authorized to do business by the Pennsylvania Division of Corporations. *Id*. at ¶¶ 11-12. Defendants' lie as to being located in Pennsylvania is intended to mislead consumers into believing that Defendants operate as United States entity, when they in fact do not, and to give them cover and credibility in carrying on their illegal business.

Upon information and belief, Defendants will continue to register or acquire domain names for the purpose of selling and/or offering for sale goods bearing counterfeit and confusingly similar imitations of Plaintiffs' trademarks, images, designs, and protected indicators of source unless enjoined. Defendants and their co-conspirators will continue to maintain and grow their illegal marketplace unless enjoined.

Defendants' internet-based website business and associated marketplace amount to an illegal operation established and operated to infringe upon the intellectual property rights of Plaintiffs and others. Defendants' domain name and any other domain names used in connection with the sale of counterfeit goods bearing Plaintiffs' trademarks, including and social media accounts, are essential components of Defendants' counterfeiting and infringing activities and are the means by which Defendants further their counterfeiting and infringing scheme and cause harm to Plaintiffs. Perros Dec. at ¶¶ 36-57. Defendants are using Lindsey Adelman's famous name, trademarks and acclaimed lighting designs to drive internet consumer traffic to their websites operating under the subject domain names. *Id.*

Despite good faith efforts and the expenditure of resources to do so, because of Defendants' deception and concealment, Plaintiffs have been unable to verify the actual names and addresses


LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

behind Defendants' business. Hurwitz Dec. at ¶¶ 10-16. Nonetheless, through investigation and review of publicly available documents in the Peoples Republic of China, Plaintiffs have determined that Defendants are likely comprised of a dissolved Chinese company, an individual named Liang Tang, and unknown others potentially acting in concert with the Defendants. Id. at ¶ 15.

## III. ARGUMENT

### A. A Temporary Restraining Order is Essential to Prevent Immediate Injury

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Moreover, temporary restraining orders are available on an *ex parte* basis if the movant shows through an affidavit that there is a threat of intervening immediate, irreparable harm before the adverse party may be heard in opposition and the movant's attorney certifies in writing why notice should not be required. Fed. R. Civ. P. 65(b).

In *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979), the Second Circuit held that a trademark owner was entitled to a temporary restraining order without notice under Rule 65(b) to maintain the status quo and prevent counterfeiting and ongoing infringement. The court explained that Rule 65(b), "by its very terms allows for the issuance of an Ex parte temporary restraining order" when, absent the TRO immediate and irreparable injury is threatened, and the plaintiff demonstrates reasons why notice should not be given.

"In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)


LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

(1)." *Matter of Vuitton et Fils S.A.*, 606 F.2d at 4.[2] Abundant federal courts have recognized that civil actions against counterfeiters and infringers – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an *ex parte* basis. *See Salvatore Ferragamo S.P.A. v. Does,* 2013 WL 12108075, at *1 (S.D.N.Y. Nov. 22, 2013), report and recommendation adopted sub nom., *Ferragamo v. Does,* 2014 WL 12543812 (S.D.N.Y. Feb. 5, 2014)(granting temporary restraining order, seizure order, asset restraining order, domain name transfer order, order permitting service by electronic mail, and order to show cause for a preliminary injunction in trademark infringement and counterfeiting case); *Belstaff Group SA v. Doe*, 2015 WL 10852520, at *1 (S.D.N.Y. June 18, 2015)(granting ex parte TRO against John Doe defendants, for seizure of assets, disabling websites, and to show cause as to requested preliminary injunction in trademark infringement and counterfeiting case); *Moose Toys Pty Ltd. v. Thriftway Hylan Blvd. Drug Corp*., 2015 WL 4772173, at *2–4 (E.D.N.Y. Aug. 6, 2015)(granting TRO in trademark infringement and counterfeiting case where declarations established that prior notice could result in defendants'' attempt to destroy, conceal, or transfer the counterfeit goods or related evidence); *Time Warner Entertainment Co., L.P. v. Does Nos. 1-2*, 876 F. Supp. 407, 410 (E.D.N.Y. 1994)("Where plaintiffs have shown that a danger exists of destroying or transferring infringing goods, courts in this Circuit have not hesitated to grant ex parte orders under either the Lanham Act or the Copyright Act)(citing *Century Home Entertainment, Inc. v. Laser Beat, Inc.*, 859 F.Supp. 636, 638 (E.D.N.Y.1994)(other citations omitted).

---

[2] In light of *Salinger v. Colting*, 607 F.3d 68, 74–75 (2d Cir. 2010), which followed the Supreme Court's decision in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), courts no longer presume irreparable harm upon a finding of likelihood of success. Here, Plaintiffs are threatened with irreparable harm in the absence of a TRO and preliminary injunction, as demonstrated herein. *See* section III. D.



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

As demonstrated herein, such irreparable and immediate injury will result to Plaintiffs if Defendants' wrongful activities are not immediately stopped by the issuance of a temporary restraining order. *See* Perros, Hurwitz and Markow Declarations. The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of the Lindsey Adelman marks and would preserve the status quo until such time as a hearing can be held. Thus, a temporary restraining order is appropriate. *Accord Dell Inc. v. Belgium Domains, LLC*, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007)(finding *ex parte* relief more compelling where defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by defendants.").

Absent a temporary restraining order, Defendants can significantly alter the status quo before the Court can determine the parties' respective rights. Markow Dec. at ¶¶ 11-14. Specifically, Defendants' website is under their complete control, and they have the ability to modify registration data and content, change hosts, and even redirect traffic to other websites they register or control. *Id.* Essentially, Defendants could redirect and push traffic from the subject domain name to new domains not yet identified. *Id*. Defendants could completely erase the status quo by transferring all of the benefits of their prior illegal activities to new websites or by taking other evasive actions outside the purview of the Court.

**B. Standard for Temporary Restraining Order and Preliminary Injunction**

Within the Second Circuit, the standards for entry of a temporary restraining order are the same as those that govern the entry of a preliminary injunction under Fed. R. Civ. P. 65. *Moose Toys Pty Ltd.,* 2015 WL 4772173, at *2–4 (citing *Fequiere v. Tribeca Lending*, 2015 WL 1412580, at *2 (E.D.N.Y. Mar.20, 2015); *Christian Louboutin S.A. v. Yves Saint Laurent America Holding, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012)). Plaintiffs must demonstrate: (i) either a likelihood of

success on the merits or sufficiently serious questions going to the merits; (ii) irreparable harm in the absence of immediate relief; and that the balance of hardships tips in favor of preliminary relief. *Id.*; *Salinger v. Colting*, 607 F.3d 68, 74–75 (2d Cir. 2010).

### C. Plaintiffs Have a Substantial Likelihood of Success on the Merits

To prevail on its trademark infringement and counterfeiting claims under the Lanham Act, Plaintiffs must establish: "(1) that [they have] a valid trademark entitled to protection under the Act, and (2) defendant[s'] actions are likely to cause confusion." *Edward B. Beharry & Co., Ltd. v. Bedessee Imports Inc.*, 2006 WL 3095827, at *1 (E.D.N.Y. Oct.31, 2006) (quoting *Arrow Fastener v. Stanley Works*, 59 F.3d 384, 390 (2d Cir.1995)); *See also Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999) (adding elements of unauthorized use).

Here, Plaintiffs seek a TRO and preliminary injunction against Defendants' counterfeiting and infringement of registered trademarks under to 15 U.S.C. §1114(a), and to protect unregistered marks under 15 U.S.C. §1125(a) (claims for "false designation of origin"). Plaintiffs' registered marks are: LINDSEY ADELMAN STUDIO and BRANCHING BUBBLE. The unregistered Lindsey Adelman Marks forming the basis of Plaintiffs' request for a TRO and preliminary injunction are: LINDSEY ADELMAN, and a segment of Plaintiffs' famous lighting design collections: AGNES, CHERRY BOMB, BURST, EDIE, and BRANCHING DISC, each of which are being counterfeited in connection with Defendants' sales of copies of Plaintiffs' famous lighting designs.[3]

---

[3] 15 U.S.C. § 1125(a)(1)(section 43(a)(1) of the Lanham Act) provides, in part that:

> Any person who, on or in connection with any goods or services or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which ... is likely to cause confusion, or to cause mistake, or to deceive

The Court's analysis is the same for Plaintiffs' trademark infringement and false designation of origin claims. In *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 154–55 (E.D.N.Y. 2016), the court explained the overlap between the two form of trademark infringement:

> Although §1114 and §1125 differ in that the latter statute covers both registered and unregistered trademarks, the legal standard to establish liability "is the same" under both sections. *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F.Supp.2d 448, 454 (S.D.N.Y.2005); *Invicta Plastics (USA) Ltd. v. Mego Corp.*, 523 F.Supp. 619, 622 (S.D.N.Y.1981) ("Under both the infringement section of the Lanham Act, 15 U.S.C § 1114, and the false designation of origin section, 15 U.S.C. § 1125, the same test is applied to determine whether a particular activity violates the Act."); *Microsoft Corp. v. AGA Solutions, Inc.*, 589 F.Supp.2d 195, 202 (E.D.N.Y.2008) ("case law applicable to section 32 claims applies to section 43 claims"). Accordingly, the court need not conduct a separate analysis of plaintiffs' false designation of origin claim because "[t]he same facts that establish [defendants] violated section 32 of the Lanham Act establish[ ] that they violated section 43(a)." Microsoft Corp., 589 F.Supp.2d at 203.

(emphasis added); *See also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992) (essence of a claim under 15 U.S.C. §1125(a) is "likelihood of confusion").

1. Plaintiffs Have Valid Trademarks Entitled to Protection

As for Plaintiffs' registered marks --LINDSEY ADELMAN STUDIO and BRANCHING BUBBLE-- the registrations from the Trademark Office constitutes prima facia evidence that the marks are valid, entitled to protection, Plaintiffs' own "the mark and it has exclusive right to use

---

as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services or commercial activities by another person ... shall be liable in a civil action. 15 U.S.C. §1125(a)(1).

the mark in commerce." *Moose Toys Pty Ltd.*, 2015 WL 4772173, at *2 (citing *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt. Inc.*, 192 F.3d 337, 345 (2d Cir.1999))."

Through their pleadings and Declarations, Plaintiffs have verified that they are the owners of all the rights in the Lindsey Adelman marks in connection with the sale of lighting design products. The Perros Declaration and exhibits thereto establish the federal registrations for LINDSEY ADELMAN STUDIO and BRANCHING BUBBLE. Similarly, Plaintiffs have established their rights and exclusivity over the unregistered Lindsey Adelman marks in connection with Plaintiffs' lighting design products. In particular, Lindsey Adelman, individually has been honing her craft and charting her course as one of America's most iconic and sought-after lighting designers since 1996, and Plaintiffs have used the LINDSEY ADELMAN name as their primary indicator of origin for their haute lighting design products since the inception of Lindsey Adelman Studio in 2006. *See* Perros Dec. at ¶¶ 6-7; 16-17. Likewise, the other unregistered Lindsey Adelman marks are Plaintiffs' branded lighting collections and product names --*Cherry Bomb, Branching Bubble*, *Agnes*, *Burst*, *Edie*, and *Branching* Disc-- and are entitled to protection based on Plaintiffs' longstanding and prominent use in connection with their lighting sales. *Id*. at ¶¶ 9-17 Consequently, Plaintiffs' have established protectable rights in the Lindsey Adelman marks.

2. <u>Defendants' Counterfeiting and Infringement are Likely to Cause Confusion</u>

a. *Counterfeiting is Inherently Confusing*

Section 45 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. §1127. A comparison of the Lindsey Adelman marks at issue to the marks used by Defendants in connection with the promotion and sale of Defendants' products reveals the obvious counterfeit nature. *See* Perros

Dec at ¶¶ 35-57. Defendants sell copies of Plaintiffs' products while incorporating counterfeits of the Lindsey Adelman marks in their promotion, marketing and sale of their goods to consumers in this District through Defendants zoralighting.com website. *Id*.

In evaluating the "likelihood of confusion requirement", Second Circuit courts ordinarily apply the eight-factor test set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495–96 (2d Cir.1961). *See Innovation Ventures, LLC* 176 F. Supp. 3d at 153–54. However, whereas here, compelling evidence of counterfeiting has been presented, the Court need not undertake an exhaustive analysis of the *Polaroid* factors because "counterfeit marks are inherently confusing." *Id. (quoting Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F.Supp.2d 585, 596–97 (S.D.N.Y.2010); *Gucci Am., Inc. v. Duty Free Apparel Ltd.*, 286 F.Supp.2d 284, 287 (S.D.N.Y.2003) (use of counterfeits likely to cause confusion because "counterfeits, by their very nature cause confusion").

Speaking directly to the issues presented here, the court in *Moose Toys Pty Ltd.*, 2015 WL 4772173, at *2 held that:

> the photo comparisons attached to the Complaint establish not just a similarity of marks, but that the allegedly counterfeit products explicitly copy Plaintiffs' Marks . . . and other features distinctive of [plaintiff's] Products. As such, a step-by-step analysis of the *Polaroid* factors is not necessary to support a finding of confusion, as "counterfeit marks are inherently confusing."

(citations omitted).[4]

[4] Though the record demonstrating Defendants' counterfeiting activities supports a finding of "inherent confusion", consideration of the eight *Polaroid* factors would yield the same result. The *Polaroid* factors are: (1) strength of plaintiffs' mark; (2) degree of similarity between the two marks; (3) proximity of the products in the marketplace; (4) likelihood that the plaintiff will enter a market related to that in which the defendant sells its product; (5) evidence of actual confusion; (6) defendant's bad faith; (7) quality of the defendant's product; and (8) sophistication of the relevant consumer group. *Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir.1995). Here, Defendants are using the exact Lindsey Adelman marks, which are unique and



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

Further, the Second Circuit and other courts have found infringement where defendants have used plaintiffs' trademarks to distribute unauthorized goods, in part because the plaintiffs are unable to control the quality of their goods. "One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods [distributed] under the holder's trademark." *See El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986); *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) (defendant infringed Shell trademark by marketing bulk authentic Shell oil according to its own and not Shell's quality control standards).

Defendants' use of the Lindsey Adelman marks is not authorized by Plaintiffs. *See* Perros Dec. at ¶ 48. Without Plaintiffs' consent, Defendants sell, market and offer for sale counterfeits and unauthorized copies of Plaintiffs' products bearing the identical Lindsey Adelman marks and photos commissioned by Plaintiffs that expressly incorporate the Lindsey Adelman marks. *Id*. at ¶ 45. Defendants are offering imitation lighting products bearing marks that are identical to or substantially indistinguishable from Plaintiffs' marks.

Defendants fraudulently offer to sell and sell goods bearing the Lindsey Adelman marks via their website which is heavily promoted by Defendants on social media and through internet marketing efforts. By their actions, Defendants are creating a false association in the minds of consumers between Defendants and Plaintiffs. Defendants are brazenly using authentic images of Plaintiffs' products depicting the Lindsey Adelman marks as Plaintiffs depict them in an effort to pass off Defendants' counterfeit and infringing goods. *Id*. at ¶ 52.

---

distinctive to Plaintiffs, to sell identical imitation lighting design copies. The balance of these factors supports the relief Plaintiffs seek.



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

b. *Defendants Can Mount No Defense In Support of their Purposeful Misconduct*

Although unfathomable, Plaintiffs seek to be mindful of any potential defense that may be raised. None would seem to have merit, but the potential that Defendants could raise the "nominative fair use" defense warrants brief mention.

A commercial user that is not using a protected mark to refer to his own product may be entitled to a nominative fair use defense. *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 489 - 90 (S.D.N.Y. 2008)(citing *The New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 308 (9th Cir.1992)). Defendants cannot avail themselves to a nominative fair use defense here.

To establish a "nominative fair use" three requirements must be met by Defendants:

> [1] the product ... must be one not readily identifiable without use of the trademark; [2] only so much of the mark ... may be used as is reasonably necessary to identify the product ...; and [3] the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Id.*; *see also Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 456–58 (S.D.N.Y. 2017); *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 167 (2d Cir. 2016).

Defendants would fail on each of the requirements to sustain a nominative fair use defense. Defendants use the identical Lindsey Adelman marks in the exact manner that Plaintiffs use their marks to sell Defendants' cheap imitations. Defendants do not require use of the Lindsey Adelman marks to identify their products, yet they show no restraint in doing so. Instead, Defendants make comprehensive use of the Lindsey Adelman marks without any distinction between their cheap copies and Plaintiffs authentic goods. Defendants' use of the Lindsey Adelman marks in conjunction with authentic Adelman images highlights Defendants' intent to misrepresent sponsorship, affiliation and alignment with Plaintiffs.

Examination of Defendants' utilization of the Lindsey Adelman marks and the authentic Lindsey Adelman Studio pictures reveals that in some instances Defendants add the term "replica" adjacent to the exact Lindsey Adelman Studio product name and depiction. *See* Perros Dec. at Composite Exhibit "10". Use of the term "replica" provides zero protection to Defendants for their counterfeiting and infringement. As observed by the Court in *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 248 - 249 n. 7 (S.D.N.Y. 2010), the term "'replica' is in fact often used in conjunction, or interchangeably, with the term 'counterfeit' in case law on trademark infringement." (citing *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 106 (2d Cir.2000) (reversing summary judgment on trademark claims in favor of defendants that sold "replicas" of various Hermès handbag lines); *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 100 (2d Cir. 2010) (defendant internet auction house has disclaimer that it "does not tolerate" replicas); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp. 2d 1098, 1103 (N.D. Cal. 2008) ("Plaintiff believes that each of them is a counterfeit replica of Plaintiff's products which infringe Plaintiff's copyrights and trademarks."). If anything, use of the term "replica" next to Plaintiffs' authentic marks and product images reinforces the notion that Defendants' products are authorized or sponsored by Plaintiffs, when they are not.

In *Yurman Studio,* this Court flatly rejected the nominative fair use defense under circumstances starkly similar to Defendants here, stating:

> Defendants use plaintiffs' brand names to highlight the similarity of their own products to those sold by plaintiffs. . . . For example, products are advertised as "Cartier-esque" or "Bulgari-esque," and as "inspired by" or "replicas of" Plaintiffs' brands. The use of plaintiffs' brand names to describe defendants' own products, combined with the similarity of defendants' products to plaintiffs' designs, may suggest or imply plaintiffs' sponsorship, endorsement or the affiliation of defendants' products with those of plaintiffs. Defendants' "use is not nominative if it creates a likelihood of confusion about the mark-holder's affiliation or sponsorship."



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

*Yurman Studio,* 591 F. Supp. 2d at 501. Defendants simply cannot avail themselves of a nominative fair use defense, or frankly any defense that could cast doubt on Plaintiffs' substantial likelihood of success on the merits of their claims.

**D. Plaintiffs are Suffering Irreparable Harm and have no Adequate Remedy at Law**

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010)(quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir.2002)." Irreparable harm is present if "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Id*.

In *Salinger v. Colting*, 607 F.3d 68, 74–75 (2d Cir. 2010), the Second Circuit concluded that its "longstanding standard for preliminary injunctions . . . is inconsistent with the 'test historically employed by courts of equity' and has, therefore, been abrogated by *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)." *Salinger* held that a preliminary injunction should issue upon a showing of a plaintiff's likelihood of success on the merits only where the plaintiff has also shown that: (i) it is likely to suffer irreparable injury in the absence of an injunction; (ii) remedies at law are inadequate; (iii) the balance of hardships tips in plaintiff's favor; and (iv) the public interest would not be disserved by a preliminary injunction. *Id*. at 80 (citing *eBay*, 547 U.S. at 391, 126 S.Ct. 1837 (internal quotes omitted).

Courts have applied *Salinger* in trademark cases, ending a presumption of irreparable harm but finding that irreparable harm can easily be demonstrated by pointing to the fact that the trademark owner's goodwill and reputation are in peril. *See U.S. Polo Assoc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011); *Tecnimed SRL v. Kidz-Med, Inc.*, 763

F. Supp. 2d 395, 410–13 (S.D.N.Y. 2011); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F.Supp.2d 305, 342 (S.D.N.Y.2010).

In *New York City Triathlon, LLC*, 704 F. Supp. 2d at 343, the Court found irreparable harm supporting a preliminary injunction based upon plaintiff's substantial investment into making the NYC Triathlon financially successful and well-known as a premiere event. The Court found that in so doing, the plaintiff created substantial goodwill and a favorable reputation in the event, which would suffer absent injunctive relief. *Id.* In granting preliminary relief, the court sought to avoid potential confusion --which it found likely-- as to the plaintiff-trademark owner's sponsorship or affiliation with the goods and services sold and promoted by defendant. The Court concluded that that: "Prospective loss of this goodwill alone is sufficient to support a finding of irreparable harm." *Id. (*citing *Tom Doherty Assoc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37–38 (2d Cir.1995) ("a loss of prospective goodwill can constitute irreparable harm.").

The finding of irreparable harm was additionally warranted due to threats created by defendant's infringement that limited the plaintiff's ability to control its reputation and the services offered under its name and mark. Irreparable harm "exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial," because loss of control over one's reputation is neither "calculable nor precisely compensable." Id. (quoting *Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir.1985)).

Plaintiffs' reputations and goodwill is similarly at risk here due to Defendants' counterfeit use and infringement of the Lindsey Adelman marks. *See generally* Perros Dec. An award of monetary damages could not adequately compensate Plaintiffs for such a loss of reputation, goodwill, and dominion over their brand threatened by Defendants' continued piracy. Given that



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

Defendants hide their true identities and operate from outside the United States (while falsely representing otherwise), it is unlikely that Plaintiffs can recover any monetary damage award they might obtain. In sum, the harm to Plaintiffs' goodwill or loss of control over reputation is irreparable, and such irreparable injury weighs heavily in favor of a temporary restraining order and preliminary injunction.

**E. The Balance of Equities and Public Interest Favor Preliminary Injunctive Relief**

As set forth above, the harm to Plaintiffs is irreparable. In contrast, any potential harm to Defendants is purely monetary. Defendants can claim no legitimate interest in the Lindsey Adelman marks, which Defendants make ready use of in marketing and passing off imitation copies. Whereas Plaintiffs have arduously labored to develop the goodwill and value imbued within the Lindsey Adelman marks and brand, any interest claimed by Defendants in the subject marks is purely parasitic. Plaintiffs are hard-pressed to glean any equitable interest that Defendants may point to in support of a continued right to counterfeit, confuse and infringe.

The public's interest also favors a restraining order and preliminary injunction. The public has a compelling interest in protecting trademarks, and avoiding confusion as to source of origin, sponsorship or affiliation. Defendants' unauthorized use of the Lindsey Adelman marks in connection with their inauthentic copies or Plaintiffs' designs runs afoul of the public's interest in protection of trademarks.

As explained in *New York City Triathlon:*

> In this case, the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality. *SK & F, Co. v. Premo Pharm. Labs., Inc.*, 625 F.2d 1055, 1067 (3d Cir.1980); accord *Nat'l Rural Elec. Co-op Ass'n v. National Agr. Chemical Ass'n*, 26 U.S.P.Q.2d (BNA) 1294, 1299 (D.D.C.1992) (the public interest *345 lies in avoiding confusion, particularly where



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

> defendant would be able to continue its activities under another mark). Accordingly, the public interest would not be disserved by this Court's injunction, and the Court finds that all factors favor injunctive relief.

704 F. Supp. 2d 305, 344–45 (S.D.N.Y. 2010). Here too, the balance of equities and the public's interests weigh heavily in favor of temporary restraint and a preliminary injunction halting Defendants' counterfeiting and infringement of the Lindsey Adelman marks.

## IV. EQUITABLE RELIEF IS APPROPRIATE INCLUDING ORDERING SERVICE PROVIDERS TO CEASE PROVIDING SERVICES TO DEFENDANTS

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark . . . ." 15 U.S.C. § 1116(a). Moreover, Federal Rule of Civil Procedure 65(d)(2) vests courts with the power to issue injunctions that bind parties, parties' officers, agents, servants, employees, and attorneys and any "other persons who are in active concert or participation with" any such individuals or entities.

### A. Entry of an Order Immediately Enjoining Defendants' Unauthorized Use of the Lindsey Adelman marks is Appropriate

Plaintiffs request an order requiring Defendants' immediately cease all use of the Lindsey Adelman marks, or substantially similar marks, including on or in connection with their website and all domain names owned, operated, or controlled by them. Such relief is necessary to stop the ongoing harm to Plaintiffs' trademarks and goodwill, and to prevent Defendants from continuing to benefit from the increased traffic to, and sales from, their illegal website operations generated by their unlawful use of the Lindsey Adelman marks.



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

**B. An Order Prohibiting Transfer of Defendants' Domain Names, Modifying Control, Redirecting, and Disabling During the Pendency of this Action is Appropriate**

To preserve the status quo, Plaintiffs seek an order temporarily modifying control of Defendants' www.zoralighting.com website, and prohibiting Defendants from transferring the subject domain names or its content to other parties. Plaintiffs' submissions demonstrate Defendants' willful infringement and counterfeiting is orchestrated from outside the United States. Defendants operate exclusively over the internet, and have concealed their true identities and location. Hurwitz Dec. at ¶¶ 10-16. Other false submissions by Defendants misrepresent them as being United States entities, listing business addresses in Pennsylvania and Arizona that are false and/or have no nexus to Defendants' business activities. Hurwitz Dec at ¶¶ 10-16.

Defendants' ongoing illegal conduct is completely reliant on domain name registries and other third-party service providers to carry out their activities. If not prevented by the Court, Defendants may easily change the ownership of a domain name and thereby frustrate the Court's ability to provide relief to the Plaintiffs. Markow Dec. at ¶ 12. Moreover, Defendants can modify website content or redirect traffic to thwart effective injunctive relief. *Id.* at ¶ 11.

To effectuate the requested temporary restraining order and preliminary injunction, the Court should order that: (i) registries and registrars disable the domains to the www.zoralighting.com and that (ii) third-party service providers cease providing services to the Defendants' website and Defendants in relation to the Lindsey Adelman marks. An interim order prohibiting Defendants from transferring their domain name preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Plaintiffs full relief.


LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

Courts in this District and many others have granted similar relief directed to internet registrars, web hosts, and third-party service providers to enjoin counterfeiting and infringement, preserve the status quo, and protect the goodwill of intellectual property owners from the threats of anonymous bad actors on-line.[5] Because Defendants undertake their activities from outside the United States, and have taken steps to shield their actual identities, it is essential for the prevention of additional irreparable harm that injunctive relief include orders directed at third parties whose services enable Defendants' activities. Plaintiffs have filed a proposed order simultaneously herewith that directs: (i) registries and registrars to disable Defendants' domain name and (ii) third-party service providers to cease providing services to www.zoralightinig.com and Defendants in relation to the Lindsey Adelman marks.

**C. Bond to Secure the Requested Injunctive Relief**

Because of the strong and unequivocal nature of Plaintiffs' claims and evidence of counterfeiting, infringement, and false designation of origin, Plaintiffs believe a bond in the sum of ten thousand dollars ($10,000.00) is sufficient to secure the threat of am improvidently entered

[5] *See e.g. Arista Records, LLC v. Tkach*, No. 15-cv-3701 (AKN), at 3, 5–11 (SDNY June 3, 2015)(DE 58)(enforcing TRO against third party provider of domain name and proxy services to the defendants); *Belstaff Group SA v. Doe*, No. 15-cv-2242 (SDNY Apr. 8, 2015) ) (Temporary Restraining Order [DE 7]); *Warner Bros. Ent., Inc. v. Doe*, No. 14-cv-3492 (KPF)(SDNY May 29, 2014)(DE 6)(granting preliminary injunction following a temporary restraining order against defendants' online copyright and trademark infringement); *Advanced Access Content System Licensing Administrator, LLC v. Shen*, [Doc. No. 21], No. 14-cv-1112 (VSB)(S.D.N.Y. Mar. 4, 2014)(granting preliminary injunction and directing third parties and internet registrars to cease support and disable domains through which defendants infringed); *Richemont Int'l SA v. Xiao*, No. 13-cv-9071 (SDNY Dec. 23, 2013)(Temporary Restraining Order [DE 12]); *Richemont Int'l SA v. Chen*, No. 12-cv-6689 (SDNY Sept. 4, 2012)(Temporary Restraining Order [DE 16]); *The Nat'l Football League v. Chen*, No. 11-Civ-0344 (WHP)(SDNY Jan. 19, 2011)(Temporary Restraining Order [Doc. No. 7]); *The North Face Apparel Corp. v. Fujian Sharing Import & Export Ltd.,* 10-Civ-1630 (AKH)(SDNY)(DE 15) (granting TRO and order to show cause directing domain name registries, registrars, and third parties to disable access to the websites and cease support of same due to defendants' trademark counterfeiting activities over various domain names).



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

injunction. The amount of a required bond as security upon issuance of a temporary restraining order or injunction is subject to the Court's sound discretion pursuant to Fed. R. Civ. P. 65(c).

## V. PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING THE FRAUDULENT TRANSFER OF ASSETS

Pursuant to 15 U.S.C. §1117(a), Plaintiffs will be entitled to an equitable accounting of Defendants' profits from their trademark counterfeiting and infringement. On this basis, the Second Circuit has expressly held that district courts possess inherent equitable authority to restrain Defendants' assets so that these equitable remedies are not later frustrated by dissipation. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 130 (2d Cir. 2014); *See also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007)("the district court was authorized to preserve the status quo by entering a limited asset freeze" pursuant to 15 U.S.C. §1117(a))(citing *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 584–85 (5th Cir.1980); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986–87 (11th Cir.1995); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir.1992).

Here, Defendants have taken purposeful efforts to conceal their identities and evade identification. Defendants, who operate overseas while marketing counterfeit goods into their District, have invoked false names and addresses in connection with their business enterprise, including incomplete domain name registration information to frustrate their identification. This type of evasive behavior, coupled with their purposeful counterfeiting, justifies an asset restraint to ensure that Plaintiffs' are able to pursue complete and meaningful relief.

## DEMAND

**WHEREFORE**, Plaintiffs, Lindsey Adelman Studio, LLC and Lindsey Adelman respectfully request entry of a Temporary Restraining Order pursuant to Fed. R. Civ. P. 65(b) and an Order to Show Cause Why a Preliminary Injunction Should Not Issue providing that:

1. Defendants, ZORA Lighting Co., Ltd., Liang Tang, and John Does Nos. 1 – 5, their agents, employees, representatives, privies, proxies, successors, and assigns, and all persons acting in concert, participation or combination with the Defendants having notice of this Order are hereby enjoined and prohibited from:

(a) Using the Lindsey Adelman Marks in any manner, and from making, using or promoting any mark that is similar thereto particularly in connection with interior and lighting design sales, concepts or products, including on the internet through e-commerce websites, including on www.zoralighting.com, in meta-data, marketing or promotional activities such as Google ad-words, or other key word advertising;

(b) Making, using, offering for sale or selling any lighting fixture through the use of any name, mark or indicator of origin that is confusingly similar to the Lindsey Adelman marks;

(c) Using marks or other indicators of origin that are likely to cause confusion, mistake, or deception in the minds of the consuming public as to Plaintiffs' affiliation, association, connection, licensing, sponsorship, or approval of any of the products or services offered by Defendants;

(d) Passing off, inducing, or enabling others to offer or pass off any product or service which does not originate from Plaintiffs as a product or design that does in fact originate from Plaintiffs;

(e) Committing any other act calculated to cause any person or entity to believe that Defendants' products originate from Plaintiffs, unless such product or designs do in fact originate from Plaintiffs; and



LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

(f) Utilizing any of the Lindsey Adelman marks or any derivative or variation of those terms or marks, or any visually or phonetically similar term in connection with any goods or lighting designs offered for sale, including on the internet through e-commerce websites, meta-data, marketing or promotional activities such as google ad-words, or other key word advertising. Prohibited terms shall include: Lindsey Adelman, Lindsey Adelman Studio, Branching Bubble, Agnes, Branching Disc, Burst, Cherry Bomb, Kingdom Clamp, Knotty Bubbles, Lindsey, and future Lindsey Adelman Studio collections.

2. Defendants shall not transfer ownership of the subject domain name(s) during the pendency of this Action, or until further Order of the Court.

3. The Defendants' internet domain names, and any other domain names being used by Defendants to engage in the business of marketing, offering to sell and/or selling goods bearing counterfeits and infringements of the Lindsey Adelman marks to be disabled and/or immediately placed on hold, subject to further Order of Court.

4. Upon notice actually received from Plaintiffs', any third-party service providers, including internet search engines, web hosts, domain-name registrars and domain-name registries or administrators which are provided with notice of the injunction, cease facilitating access to any or all websites through which Defendants engage in the promotion, offering for sale and/or sale goods bearing counterfeits and/or infringements of the Lindsey Adelman marks;

5. In accordance with 15 U.S.C. §1116(a) and this Court's inherent equitable power to issue provisional remedies that Defendants, their officers, employees, agents and any persons in active concert or participation with them, and banks, savings and loan associations, payment processors or other financial institutions, payment providers, third-party processors and advertising service providers who receive actual notice, shall immediately locate and restrain any accounts connected to


LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

Defendants' operations or the www.zoralighting.com website; and shall not allow such funds to be transferred or withdrawn or allow any diminutions to be made by Defendants from such accounts, pending further order of this Court or notification otherwise by Plaintiffs; and

6. Such other relief as this Court deems just and proper.

DATED: May 22, 2019.

Respectfully submitted,

Becker & Poliakoff, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
Telephone: (954) 987-7550
Facsimile: (954) 985-4176
grosen@beckerlawyers.com
kmarkow@beckerlawyers.com
oedwards7@beckerlawyers.com

By: /s/ Gary C. Rosen
Gary C. Rosen, Esq.
NY Bar No. 5581616
Kevin Markow, Esq.
FL Bar No. 66982
*(pro hac vice application in process)*
Oliver Edwards VII, Esq.
NY Bar No. 5168174

ACTIVE: L25798/395006:12317316_1_KMARKOW