UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No:  1:19-cv-04715-NRB

LINDSEY ADELMAN STUDIO, LLC, a
New York limited liability company, LINDSEY
ADELMAN, individually,

    Plaintiffs,

vs.

ZORA Lighting Co., Ltd., a Chinese
business entity; Liang Tang, individually,
and John Does Nos. 1 - 5,

    Defendants.
_____/

**Plaintiffs' Supplement to Memorandum of Law In Support of
Ex Parte Motion for Temporary Restraining Order and
Order to Show Cause Why a Preliminary Injunction Should Not Issue**

Becker & Poliakoff, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL  33301
Telephone:  (954) 987-7550
Facsimile:  (954) 985-4176
grosen@beckerlawyers.com
kmarkow@beckerlawyers.com
oedwards7@beckerlawyers.com

By:   /s/ Kevin Markow
    Gary C. Rosen, Esq.
    NY Bar No. 5581616
    Kevin Markow, Esq.
    FL Bar No. 66982
    *Admitted Pro Hac Vice*
    Oliver Edwards VII, Esq.
    NY Bar No. 5168174

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.  DEFENDANTS SELL PIRATED LIGHTING DESIGNS USING
    COUNTERFEIT TRADEMARKS AND FALSE DESIGNATIONS OF ORIGIN
    DIRECTLY TO CONSUMERS FROM AN OFFSHORE WEBSITE ............................. 1

II. DEFENDANTS' SITE COUNTERFEITS OTHER DESIGNERS .................................. 2

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

# **TABLE OF AUTHORITIES**

*Cases*

*Belstaff Group SA v. Doe*, 15-CV-2242(PKC)(MHD), 2015 WL 10852520, at *2-3
    (S.D.N.Y. June 18, 2015) .................................................................................... 3, 4

*Commodity Futures Trading Com'n v. Walsh*, 618 F.3d 218, 226 (2d Cir. 2010) .......................... 5

*Dell Inc. v. BelgiumDomains, LLC*, 2007 WL 6862341, at *3 (S.D. Fla. 2007) ............................ 4

*Ferragamo v. Does,* 2014 WL 12543812 (S.D.N.Y. Feb. 5, 2014) ............................................ 3, 4

*Ideavillage Products Corp. v. 1Yuyani et al.*, Case No. 1:18-cv-10000-NRB ........................... 1, 2

*S.E.C. v. Rosenthal*, 426 Fed.Appx. 1, 3, 2011 WL 2271743 (2d Cir. 2011) ................................ 5

*Salvatore Ferragamo S.P.A. v. Does*, 13CV00542LAKSN, 2013 WL 12108075, at *3
    (S.D.N.Y. Nov. 22, 2013) ....................................................................................... 3

*SEC v. Byers*, No. 08 Civ. 7104(DC), 2009 WL 33434, at *3 (S.D.N.Y. Jan.7, 2009) .................. 5

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 - 108 (2d Cir. 2010) ........................................... 2

*U.S. v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No. 58-
    400738-1 in the Name of Ishar Abdi and Barbara Abdi*, 255 F.Supp.2d 56, 68
    (E.D.N.Y. 2003) .................................................................................................... 5

*Rules*

Fed. R. Civ. P. 65(b) ................................................................................................... 5

Plaintiffs, Lindsey Adelman Studio, LLC, and Lindsey Adelman, individually, file their Supplement to Memorandum of Law in Support of Ex Parte Motion for Temporary Restraining Order and Order to Show Cause why a Preliminary Injunction Should not issue, against Defendants, ZORA Lighting Co., Ltd., Liang Tang, and John Does Nos. 1 – 5 [Dkt. 5], and in support thereof, state:

## I. DEFENDANTS SELL PIRATED LIGHTING DESIGNS USING COUNTERFEIT TRADEMARKS AND FALSE DESIGNATIONS OF ORIGIN DIRECTLY TO CONSUMERS FROM AN OFFSHORE WEBSITE

Defendants are direct sellers and marketers of counterfeit lighting designs that incorporate and pass-off the authentic marks of Plaintiffs and other high-end lighting designers.  The channel for Defendants' illegal commerce is its own website: www.zoralighting.com.  Defendants operate the site and conduct their counterfeit scheme from overseas.  From review of the site and public research, Defendants' payment processors appear to also operate from overseas (seemingly beyond the jurisdiction of the Court).[1]

The fact that Defendants own and operate the actual site through which they perpetuate their illegal counterfeiting scheme starkly distinguishes this case from other cases where infringers take advantage of a marketplace provided by third-parties to sell counterfeit and infringing goods.

One recent case before this Court, where Defendants sought and received a TRO against sellers of counterfeit goods was *Ideavillage Products Corp. v. 1Yuyani et al.*, Case No. 1:18-cv-10000-NRB.  There, the Court granted a request for TRO against counterfeiters selling illegal goods over a third-party marketplace platform, www.wish.com, from their own dedicated merchant store on the marketplace site.  *See Ideavillage Products Corp*, Case No. 1:18-cv-10000-

---

[1] *See* Supplemental Declaration of Kevin Markow at ¶ 4 – 10 filed simultaneously herewith ("Markow Supp.").

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

NRB (Temporary Restraining Order dated November 13, 2018)(Dkt. 13 at ¶ 8).  In *Ideavillage*, a TRO was neither sought nor considered against the marketplace, wish.com.  There was no claim or reason to believe that the website through which illegal sales where conducted actually knew of, or supported, Defendants' illegal conduct and thus no claim was lodged against wish.com.[2]

## II.     DEFENDANTS' SITE COUNTERFEITS OTHER DESIGNERS

Here, it is not through a third-party marketplace, such as ebay.com, wish.com or the like, that Defendants conduct their illegal scheme.  They sell their counterfeit goods directly to consumers brazenly on their own website: www.zoralighting.com.[3]

Plaintiffs are not the only designers and trademark owners victimized by Defendants' counterfeiting and illegal scheme.  Filed simultaneously herewith is the Declaration of Rebecca Satterlee, the founder, owner and designer of contemporary lighting and home décor brand Bec Brittain ("Bec Dec").  Bec Brittain is a lighting designer that is also prominently featured and counterfeited on Defendants' website.  *See* Bec Dec. at ¶ 10.  Defendants follow the exact pattern of counterfeiting and infringement with Bec Brittain as with Plaintiffs: unauthorized "replica" designs, use of exact product names, and authentic Bec Brittain product images in Defendants' marketing and sale of counterfeits.  *Id*. at ¶ 17.  Though Plaintiffs have not had the opportunity to

---

[2] The standard for liability as to marketplace providers which merely offer a forum that is abused by infringers was explained in *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F. 3d 93, 107 - 108 (2d Cir. 2010):  "For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary."

[3] Also, unlike this matter, in *Ideavillage*, the financial institutions were established pay services that operate within the U.S.  While the TRO there was paramount, the likelihood of plaintiff recovering assets from payment processors was enhanced by: (i) the nature of the products sold (i.e., higher volume, lower cost cosmetic products versus lower volume lighting installations priced in the thousands of dollars, even the counterfeits); and (ii) the U.S. based presence and services of the financial institutions.

receive feedback from every designer listed on Defendants' website, in light of the additional Declaration and evidence submitted, the most logical inference to be drawn is that Defendants' entire site and business operation is dedicated to counterfeits, deception, and infringement.[4]

Recent cases from other Courts in this District have issued TROs, disabling entire websites where counterfeit activities took place based on the complaint of a single trademark owner.  S*ee Belstaff Group SA v. Doe*, 15-CV-2242(PKC)(MHD), 2015 WL 10852520, at *2-3 (S.D.N.Y. June 18, 2015); *Salvatore Ferragamo S.P.A. v. Does*, 13CV00542LAKSN, 2013 WL 12108075, at *3 (S.D.N.Y. Nov. 22, 2013), report and recommendation adopted sub nom., *Ferragamo v. Does,* 2014 WL 12543812 (S.D.N.Y. Feb. 5, 2014).

In *Belstaff*, a TRO, preliminary and permanent injunction were issued against Defendants selling counterfeit goods through a series of websites.  The list of websites disabled and delisted included various generic domains supporting the conclusion that others' goods and marks were being counterfeited and infringed, not just plaintiff-Belstaff (e.g., peakperformanceclothes.us, zapatosfutbol.com, ecjackets.org, among many others).[5]

Like this case, *Belstaff* noted that "Defendants have gone to great lengths to conceal themselves and their ill-gotten proceeds from Plaintiff's and this Court's detection including by using multiple false identities and addresses associated with their operations as well as purposely-deceptive contact information."  *Id*.  Accordingly, among other relief, the Court:

> ORDERED, that third party vendors providing services used in connection with Defendants' Infringing Domain Names, Infringing

---

[4] Plaintiffs' believe that the evidence will ultimately demonstrate that the www.zoralighting.com website is fully dedicated to the sale of goods utilizing counterfeit and false designations of origin, with no authorized uses of the any of the "designers" that the site features.

[5] In *Ferragamo*, examples of the infringing domain names included generic counterfeiting sites: qualityreplicas.net and wholesale-retail.net.  2013 WL 12108075, at *3 n.3.  These sites, which suggest broad sales activities, were disabled and delisted upon the complaint of Ferragamo alone.

> Websites and their domain names, Newly–Discovered Infringing Websites and their domain names, and Defendants' operations, including without limitation domain name registries and registrars, third-party B2B selling platforms, providers of email services, providers of social media services, providers of online content management services, search engine and/or Internet advertising service providers, search engine optimization service providers, Internet service providers; back-end service providers, affiliate program providers, web designers, search engine or ad-word providers; and shippers, any banks, savings and loan associations, payment processors or other financial institutions. . . , once provided notice of this Order, permanently enjoined from providing services to any Defendant. . . ;
>
> ORDERED that the Infringing Websites, and all urls within the Infringing Websites, shall immediately be de-listed and/or removed from any search results pages of all Internet search engines and all social media websites including, but not limited to, Facebook and Twitter until otherwise instructed by this Court or Plaintiff that any such domain name is authorized to be reinstated, at which time it shall be reinstated to its former status within each search engine index from which it was removed . . . .

2015 WL 10852520, at *3 (S.D.N.Y. June 18, 2015).

Here, barring some temporary relief akin to that granted in *Belstaff*, *Ferragamo*, and other Courts in this District, Plaintiffs are at risk of being left without an adequate remedy due to the location and elusive nature of Defendants' activities. As observed in *Dell Inc. v. BelgiumDomains, LLC*, 2007 WL 6862341, at *3 (S.D. Fla. 2007):

> Counterfeiters involved in similar activities frequently do not respect orders of the courts: "In cases of outright counterfeiting by marginal imitators, traditional civil remedies have proven largely ineffective." 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:34 (4th ed.2007). Professor McCarthy notes that counterfeiters who have no substantial investment in stationary assets will often disappear or dispose of evidence if served with a notice of hearing on preliminary injunction.

The Declarations of Perros and Satterlee establish that Defendants are engaged in substantial counterfeiting on their website. At best, Defendants could argue that some *other* sales

and marketing activities may be legitimate.  Even assuming such an argument had merit (highly dubious), Defendants are then commingling legitimate business with their counterfeiting activities on their website.  The potential of some legitimate sales should not shield Defendants from their illegal activities on their website or allow them to escape relief directed to the entirety of their operation.[6]

Plaintiffs have met their burden under Fed.R.Civ.P. 65(b).  The balance of equities strongly favor Plaintiffs' request for TRO to temporarily disable the www.zoralighting.com website, social media accounts, and bring same under the control of Court, before Defendants have an opportunity to abscond or deny meaningful injunctive relief.  Upon research and consultation, it appears any effort to expressly target the Lindsey Adelman pages and images on Defendants' site exclusively with registrars, web hosts or the like is not technologically feasible.  *See* Markow Supp. at 11.  As unlikely as it seems, any concern as to an improvidently granted TRO can be inoculated by an appropriate bond requirement, pursuant to the Court's discretion.  Defendants' only interest as to their website is monetary, which pales in comparison to Plaintiffs', who have invested handsomely and with arduous labor to develop the goodwill and iconic reputation that they seek protect before this Court.

---

[6] Similar equitable principles as involved here apply in matters of civil forfeiture or disgorgement, where legal and illegally obtained assets cannot be commingled to shield defendants from relief. *See e.g. S.E.C. v. Rosenthal*, 426 Fed. Appx. 1, 3, 2011 WL 2271743 (2d Cir. 2011)(where ill-gotten gains of an insider trading are commingled, SEC not required to trace specific funds to ultimate recipients; imposing such a tracing requirement could enable an insider trading defendant to escape disgorgement through commingling)*; Commodity Futures Trading Com'n v. Walsh*, 618 F. 3d 218, 226 (2d Cir. 2010)(citing *SEC v. Byers*, No. 08 Civ. 7104(DC), 2009 WL 33434, at *3 (S.D.N.Y. Jan. 7, 2009)("a freeze order need not be limited only to funds that can be directly traced to ... illegal activity" since defendants should not benefit from commingling their ill-gotten gains with other assets)); *U.S. v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No. 58-400738-1 in the Name of Ishar Abdi and Barbara Abdi*, 255 F. Supp. 2d 56, 68 (E.D.N.Y. 2003) (where funds used in transaction originated from a single source of commingled illegally-acquired and legally acquired funds, no requirement to prove that no "untainted" funds were involved).

Dated: May 28, 2019

                                        Respectfully submitted,

                                        Becker & Poliakoff, P.A.
                                        1 East Broward Blvd., Suite 1800
                                        Ft. Lauderdale, FL  33301
                                        Telephone:  (954) 987-7550
                                        Facsimile:  (954) 985-4176
                                        grosen@beckerlawyers.com
                                        kmarkow@beckerlawyers.com
                                        oedwards7@beckerlawyers.com

                                By:    /s/ Kevin Markow
                                        Gary C. Rosen, Esq.
                                        NY Bar No. 5581616
                                        Kevin Markow, Esq.
                                        FL Bar No. 66982
                                        *Admitted via Pro Hac Vice*
                                        Oliver Edwards VII, Esq.
                                        NY Bar No. 5168174

ACTIVE: L25798/395006:12386924_1